IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH D. PATRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 10-0188-WS-M |
| | ) |
| BISHOP STATE COMMUNITY | ) |
| COLLEGE, etc., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 22). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 23, 24, 31, 32), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for summary judgment is due to be granted.

## BACKGROUND

The plaintiff, who is white, is employed by defendant Bishop State Community College ("Bishop"). She was employed as a full-time, non-tenured instructor in the Emergency Medical Services ("EMS") program until her contract was non-renewed in May 2008. The plaintiff returned to Bishop in the fall of 2008 as a part-time EMS adjunct instructor teaching the same two courses she had taught as a full-time instructor. President James Lowe made all the employment decisions at issue herein.

The plaintiff "does not dispute her initial non-renewal." (Doc. 31 at 1-2). However, she alleges that the defendants unlawfully discriminated against her on the basis of race by failing to return her to a full-time position. The plaintiff has abandoned

[1]

her claims under Section 1983 and state law, leaving her a single claim under Section 1981. (*Id.* at 3).

## DISCUSSION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court limits its review to those legal arguments the parties have expressly advanced.

Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330

(11th Cir. 1998). Thus, the Title VII analysis applies as well to Section 1981. *Id*.; *accord Springer v. Convergys Customer Management Group, Inc*., 509 F.3d 1344, 1347 n.1 (11th Cir. 2007).

In Title VII cases not based on direct evidence, the burden is first on the plaintiff to establish a prima facie case. If she succeeds, the employer must meet its burden of articulating one or more legitimate, nondiscriminatory reasons for the adverse employment action. The burden then shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for illegal discrimination. *E.g., Alvarez v. Royal Atlantic Developers, Inc.*, 620 F.3d 1253, 1264 (11th Cir. 2010).

The defendant's burden is usually described as one of articulating a reason "for the adverse employment action." *E.g., Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). To meet its burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *accord Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000). "Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). Rather, the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination." *Crawford*, 529 F.3d at 976 (internal quotes omitted). "In order to avoid summary judgment, a plaintiff must produce sufficient

evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (emphasis added). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008). Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer,* 509 F.3d at 1349 (emphasis in original) (internal quotes omitted). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

The defendants assert that the plaintiff's prima facie case requires her to establish: (1) membership in a protected class; (2) her qualifications for the position in question; (3) her subjection to an adverse employment action; and (4) the more favorable treatment of a similarly situated employee outside the plaintiff's protected class. The plaintiff "agrees with Defendant's … statement of proper legal analysis of her Section 1981 claim, and hereby adopts the same." (Doc. 31 at 4). The Court therefore employs the defendants' suggested formulation of the prima facie case.

The defendants concede that the plaintiff is a member of a class protected by Section 1981 and that she was qualified to be a full-time EMS instructor. (Doc. 23 at 13). However, they argue that the plaintiff has experienced no adverse employment action and that she has no valid comparator. (*Id*. at 15).

Title VII protects only against discrimination with respect to "compensation, terms, conditions or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), what the courts call an "adverse employment action." Section 1981 is similarly limited. *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1215 (11th Cir. 2008). The legal

threshold of an actionable adverse employment action is "a serious and material change in the terms, conditions, or privileges of employment," as "viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). "In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County Board of Education*, 231 F.3d 821, 829 (11th Cir. 2000). As disclosed by the plaintiff's uncontroverted evidence, the differences between part-time and full-time status in terms of wages, benefits and potential for tenure are stark and make clear that denial of full-time status represents an adverse employment action under these authorities. The defendants advance no discernible argument to the contrary.

The plaintiff's comparator is Carol Banks. Banks, who is African-American, was hired as a full-time instructor in the Funeral Services Education ("FSE") program in the fall of 2009. The FSE program and the EMS program are both within the Health Related Programs division. The defendants assert that Banks is not similarly situated to the plaintiff because: (1) they worked in different academic programs; (2) these programs had different directors; (3) Banks was hired a year after the plaintiff; (4) Dr. Lowe hired Banks based on pressures from an accrediting body; and (5) Dr. Lowe did not renew Banks' contract after its first year. (Doc. 23 at 16).[1]

The defendants cite no cases indicating that such matters prevent a comparator from being similarly situated, and several of their proposed distinctions appear facially questionable. Their third reason assumes that the plaintiff challenges being part-time only during 2008, but hers is a continuing complaint of failure to promote, including around the time of Banks' hire. Their fourth reason appears to be an attempt to inject prematurely their legitimate, non-discriminatory reasons for the difference in treatment.

---

[1] The defendants offer additional distinctions in their reply brief, (Doc. 323 at 6), but the effort comes too late. *E.g., White v. ThyssenKrupp Steel USA, LLC*, 743 F. Supp. 2d 1340, 1357 & n.29 (S.D. Ala. 2010).

Their fifth reason – addressing events long after Banks was hired – appear wholly irrelevant to whether, when she was hired, Banks was similarly situated to the plaintiff. The defendants' second distinction between Banks and the plaintiff seems to be nothing more than a repetition of their first, since different programs almost necessarily connote different directors. Moreover, the directors have not been shown to have had anything to do with Dr. Lowe's decision to hire the plaintiff part-time and Banks full-time.

That leaves the defendants to lean almost exclusively on the fact that the plaintiff and Banks worked in different programs. As the Court has noted, the purpose of the prima facie case is to "eliminat[e] the most common nondiscriminatory reasons for the adverse employment action" but "not all possible explanations." *White v. ThyssenKrupp Steel USA, LLC*, 743 F. Supp. 2d 1340, 1348 (S.D. Ala. 2010) (internal quotes omitted). Working in different programs might suggest a common nondiscriminatory reason for different treatment at a large university, especially if the comparator is in a different college (say, engineering as opposed to business), but here the EMS program and the FSE program are both tiny (with only a director and an instructor each) and they reside within the same division of the college. Perhaps a cogent argument nevertheless could be made that Banks' employment in the FSE program is a dispositive distinction, but the defendants have advanced none and the Court will not seek to craft one on their behalf.

Ultimately, the defendants repair to the mantra that a comparator must be "nearly identical" to the plaintiff. (Doc. 23 at 16). The only case to which they cite involved a claim of disparate discipline and, "[a]s far as the Court can determine, no published appellate opinion in this Circuit has ever employed a 'nearly identical' standard outside the misconduct context." *White*, 743 F. Supp. 2d at 1348 n.12. The defendants' superficial treatment does not call that conclusion into question.

For the reasons set forth above, the Court assumes for present purposes that the plaintiff can establish a prima facie case.[2] The defendants articulate Bishop's ongoing financial struggles as their legitimate, non-discriminatory reason for keeping the plaintiff part-time. This is a legally sufficient, non-discriminatory reason, and it is supported by admissible evidence that the difficulties existed and that they motivated Dr. Lowe's decision. It therefore suffices to carry the defendants' intermediate burden. The plaintiff does not argue otherwise.

The record evidence overwhelmingly demonstrates that the school has been unrelievedly in dire financial straits throughout the relevant time period, from the spring of 2008 through the present. The plaintiff "does not dispute that in 2007 and 2008 Bishop's financial management was in crisis." (Doc. 31 at 6). However, the plaintiff asserts that, as of the fall of 2009, budget constraints did not prevent Bishop from returning her to full-time employment. She has no evidence in the form of financial records or testimony to support this supposition. Instead, her only evidence is the hiring of Banks.

The evidence is uncontroverted that Banks was hired as a full-time instructor, despite ongoing and worsening financial woes, only because an outside accrediting agency advised Dr. Lowe that the FSE program could lose its accreditation unless a full-time instructor, in addition to the program director, were hired. (Lowe Affidavit at 5). Dr. Lowe's decision to hire Banks in order to ensure continued accreditation is consistent with the advice he received from his Dean of Finance to add no new expenses absent a real necessity. (Taylor Affidavit at 3).

The plaintiff nevertheless is skeptical of Dr. Lowe's stated reason for hiring Banks because the FSE enrollment numbers were low when Banks was hired and because Dr.

---

[2] The defendants in their reply brief trot out a different formulation of the prima facie case. (Doc. 323 at 5). The proposed formulation is raised too late to be considered, *see* note 1, *supra*, and it suffers from conceptual difficulties that render it inapposite.

Lowe non-renewed Banks after one year due to continued low enrollment. (Doc. 31 at 6). By the plaintiff's own evidence, however, total FSE enrollment in the spring of 2009 (just before Banks was hired) was 46 but had fallen to 20 by the spring of 2010 (after which Banks was non-renewed). (Doc. 31 at 6 n.1). Also by the plaintiff's own evidence, 46 students was enough to financially justify continued accreditation of the program through a second full-time instructor, while 20 was not. (Lowe Deposition at 26). Neither the FSE program's enrollment numbers nor Banks' non-renewal casts the slightest suspicion on the veracity of Dr. Lowe's stated reason for hiring Banks while not elevating the plaintiff to full-time status.

Dr. Lowe's affidavit squarely names the budget crisis as the cause of his decision not to return the plaintiff to full-time status. In his previous deposition, Dr. Lowe testified that she had not been considered for a return to full-time employment because he believed her capable of performing her duties on a part-time basis. The plaintiff concludes that the defendants have thereby "offered inconsistent reasons in defense of it's [sic] employment decision." (Doc. 31 at 5). This is not inconsistency but two sides of the same coin. It is the continuing budget crisis that necessitates keeping personnel expenses down, and it is the plaintiff's ability to handle both her classes on a part-time basis that obviates additional personnel expense to staff those classes.

Finally, the plaintiff insists she cannot actually perform all the required duties of her position on a part-time basis, which the parties define as 19 or fewer hours a week. (Doc. 31 at 7). This plainly has not always been true, since the plaintiff billed Bishop only 16 hours a week for her first two semesters. (Sims Affidavit at 2). For the spring 2010 semester, however, the plaintiff billed approximately 24 hours a week. (*Id*.). The EMS director thereafter advised Lowe that the plaintiff could not do the work required for her assigned courses in 19 hours a week. (Rader Affidavit).

The plaintiff does not explain the significance of this evidence, but the Court assumes she argues that her asserted inability to complete the necessary work as a part-time instructor should have caused Dr. Lowe to return her to full-time employment. It is

uncontroverted that Dr. Lowe responded to the EMS director that, should the plaintiff be unable to perform all the necessary duties in 19 hours, he was to find a second part-time adjunct instructor, since two part-time instructors cost less than one full-time instructor. (Lowe Affidavit at 7; Lowe Deposition at 14-15). Because it is uncontroverted that Bishop remains in a difficult financial condition, Dr. Lowe's decision to approve a second part-time instructor rather than elevate the plaintiff to full-time status is perfectly consistent with his articulated non-discriminatory reason and does not suggest pretext.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 2nd day of June, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE